UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |
|---|---|
| Preston and Mary Daniels, as Natural Parents and Guardians of B. D., Timothy Joest, and Jon Strube, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> G.L.A. Collection Co., Inc., <br><br> Defendant. | Civil Action No: 1:21-cv-2276 <br><br><br> **CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL** |

<u>**COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**</u>

**INTRODUCTION**

1.    The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.  Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2.    Plaintiffs Preston and Mary Daniels, as Natural Parents and Guardians of B. D. ("B.D."), Timothy Joest ("Joest"), and Jon Strube ("Strube") (collectively, "Plaintiffs"), by and

through Plaintiffs' attorneys, brings this Class Action Complaint to challenge the actions of Defendant G.L.A. Collection Co., Inc. ("Defendant") regarding Defendant's alleged violations of the FDCPA that caused Plaintiffs damages.

3.      Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs allege on personal knowledge.

4.      While many violations are described below with specificity, this Complaint alleges violations of the FDCPA cited in its entirety.

5.      Unless otherwise stated, all the conduct engaged in by Defendant took place in Indiana.

6.      All violations alleged herein are material violations of the FDCPA.

7.      Any of Defendant's communications described herein are to be interpreted under the "unsophisticated consumer" standard. *See Gammon vs. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

8.      Through this Complaint, Plaintiffs do not allege that any state court judgment was entered against anyone in error, and Plaintiffs do not seek to reverse or modify any judgment of any state court.

9.      Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

10.     Defendant acted at all times mentioned herein through its employee(s) and/or representative(s).

## JURISDICTION AND VENUE

11. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

12. This Court has federal question jurisdiction because this case arises out of violation of federal law—namely, the FDCPA.

13. Defendant is subject to the Court's personal jurisdiction, as Defendant conducts business within the Southern District of Indiana, and Defendant's conduct giving rise to this action accrued in the Southern District of Indiana.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that a substantial portion of the events or omissions giving rise to this action occurred in this District.

15. Plaintiffs each reside in this Judicial District.

## PARTIES

16. B.D. is a minor and the natural child of Preston and Mary Daniels residing in Marion county, Indiana, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

17. Joest is an adult individual residing in Hamilton county, Indiana, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

18. Strube is an adult individual residing in Marion county, Indiana, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

19. Plaintiffs are informed and believe, and thereon allege, that at all times relevant, Defendant conducted business in the State of Indiana.

20. Defendant is a debt collection agency operating from an address at 2630 Gleeson Lane, Louisville, KY, 40299, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

21.    Defendant's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN, 47204.

22.    Defendant is a person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

23.    This case involves an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment otherwise known as a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

24.    Defendant attempted to collect a "debt" from B.D..

25.    Defendant attempted to collect a "debt" from Joest.

26.    Defendant attempted to collect a "debt" from Strube.

## **FACTUAL ALLEGATIONS**

### *Background*

27.    Defendant is a debt collection agency attempting to collect alleged debts from Plaintiffs.

28.    Section 1692c(b) of the FDCPA, titled "Communication with third parties," states:

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).

29. Section 1692c(b) cross-references section 1692b, which governs the way a debt collector may communicate "with any person other than the consumer for the purpose of acquiring location information." 15 U.S.C. § 1692b.

30. The FDCPA thus broadly prohibits a debt collector from communicating with anyone other than the consumer "in connection with the collection of any debt," subject to several explicitly enumerated exceptions—some in § 1692c(b), and others in § 1692b.

31. Despite this prohibition—one designed to protect consumers' privacy—debt collectors, including Defendant, often send information regarding consumers' alleged debts to third-party mail vendors.

32. These third-party mail vendors use information provided by debt collectors—such as a consumer's name, the name of the creditor to whom a debt is allegedly owed, the name of the original creditor, and the amount of an alleged debt—to fashion, print, and mail debt collection letters to consumers.

33. This unnecessary practice exposes private information regarding alleged debts to third parties not exempted by the FDCPA.

34. Upon information and belief, Defendant routinely provides protected debt collection information regarding consumer debts to third-party mail vendors (that are not authorized by the FDCPA to receive such information) in connection with the collection of a debt and in violation of the FDCPA.

### *Defendant's Improper Disclosures to a Third-Party*

35. B.D. allegedly incurred two debts to a medical institution that were primarily for personal, family or household purposes as defined by §1692(a)(5) (the "B.D. Debts").

36.   Joest allegedly incurred two debts to a medical institution that were primarily for personal, family or household purposes as defined by §1692(a)(5) (the "Joest Debts").

37.   Strube allegedly incurred a debt to a medical institution that was primarily for personal, family or household purposes as defined by §1692(a)(5) (the "Strube Debt").

38.   Each of Plaintiffs' debts identified in Paragraphs 35-37 are hereinafter collectively referred to as the "Debts".

39.   The Debts allegedly owed by Plaintiffs all went into default.

40.   After the Debts went into default, the Debts were placed or otherwise transferred to Defendant for collection.

41.   Thereafter, Defendant communicated with at least one third-party mail vendor in connection with the collection of the Debts.

42.   Under the FDCPA, 15 U.S.C. § 1692a(2), a "communication" means "the conveying of information regarding a debt directly or indirectly to any person through any medium."

### *The B.D. Letters*

43.   On or after June 1, 2021, two written communications were sent to Mary Daniels in connection with the collection of the B.D. Debts (the "B.D. Letters").

44.   The B.D. Letters disclosed the balance of the B.D. Debts.

45.   The B.D. Letters also identified the creditor to whom Defendant alleged the B.D. Debts was owed.

46.   The B.D. Letters identified Defendant as a debt collector and stated: "This is an attempt to collect a debt.  Any information obtained will be used for that purpose. This communication is from a debt collector."

47.   Upon information and belief, Defendant did not print the B.D. Letters.

48.   Rather, upon information and belief, Defendant, in connection with the collection of a debt, provided information regarding B.D. and the B.D. Debts—including B.D.'s name, address, the balance of the B.D. Debts, the fact B.D. was a debtor, and other private details regarding the B.D. Debts—to a third-party mail vendor.

49.   The third-party mail vendor printed the B.D. Letters and sent them to Mary Daniels.

50.   The return address on the B.D. Letters do not match Defendant's address.

51.   The return address on the B.D. Letters is "P.O. Box 1280, Oaks, PA 19456" (the "Oaks P.O. Box").

### *The Joest Letters*

52.   On or after April 19, 2021, two written communications were sent to Joest in connection with the collection of the Joest Debts (the "Joest Letters").

53.   The Joest Letters disclosed the balance of the Joest Debts.

54.   The Joest Letters also identified the creditor to whom Defendant alleged the Joest Debts was owed.

55.   The Joest Letters identified Defendant as a debt collector and stated: "This is an attempt to collect a debt.  Any information obtained will be used for that purpose. This communication is from a debt collector."

56.   Upon information and belief, Defendant did not print the Joest Letters.

57.   Rather, upon information and belief, Defendant, in connection with the collection of a debt, provided information regarding Joest and the Joest Debts—including Joest's name, address, the balance of the Joest Debts, the fact Joest was a debtor, and other private details regarding the Joest Debts—to a third-party mail vendor.

58.   The third-party mail vendor printed the Joest Letters and sent them to Joest.

59.    The return address on the Joest Letters do not match Defendant's address.

60.    The return address on the Joest Letters is the Oaks P.O. Box.

### *The Strube Letter*

61.    On or after October 28, 202, a written communication was sent to Strube in connection with the collection of the Strube Debt (the "Strube Letter").

62.    The Strube Letter disclosed the balance of the Strube Debt.

63.    The Strube Letter also identified the creditor to whom Defendant alleged the Strube Debt was owed.

64.    The Strube Letter identified Defendant as a debt collector and stated: "This communication is from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose."

65.    Upon information and belief, Defendant did not print the Strube Letter.

66.    Rather, upon information and belief, Defendant, in connection with the collection of a debt, provided information regarding Strube and the Strube Debt—including Strube's name, address, the balance of the Strube Debt, the fact Strube was a debtor, and other private details regarding the Strube Debt—to a third-party mail vendor.

67.    The third-party mail vendor printed the Strube Letter and sent them to Strube.

68.    The return address on the Strube Letter does not match Defendant's address.

69.    The return address on the Strube Letter is the Oaks P.O. Box.

### *The Third-Party Mail Vendor*

70.    Upon information and belief, Defendant does not have an office location in Oaks, PA.

71.    The Oaks P.O. Box appears on other dunning letters from other debt collectors as well. *See, e.g., Saraci v. Convergent Outsourcing, Inc.*, No. 18-cv-6505 (BMC), 2019 U.S. Dist. LEXIS

36228, at *3 (E.D.N.Y. Mar. 5, 2019) (noting Convergent Outsourcing, Inc. dunning letter contained the address P.O. Box 1280, Oaks, PA 19456); *Samples v. Medicredit, Inc*., No. 3:18-cv-00418, 2019 U.S. Dist. LEXIS 96136, at *3 (M.D. Tenn. June 7, 2019) (noting the Medicredit, Inc. dunning letter contained the address P.O. Box 1280, Oaks, PA 19456).

72. A common return address on dunning letters from different debt collectors suggests the Oaks P.O. Box is not exclusively owned by Defendant.

73. Further, a common return address on dunning letters suggests the letters are not actually coming from the debt collectors, but instead are coming from a third-party.

74. The Oaks P.O. Box appears to be associated the third party-mail vendor, RevSpring, Inc.

75. RevSpring, Inc's "About Us" section on its webpage states "North America's leading healthcare organizations, revenue cycle management, and accounts receivables management companies trust us to maximize their financial results through dynamic and personalized print, online, phone, email, and text communications and self-service payment options."

76. RevSpring, Inc. maintains an office at 105 Montgomery Avenue, Oaks, PA 19456 and offers comprehensive print and mail services.

77. RevSpring, Inc.'s office in Oaks, PA is less than a half mile from the United States Post Office in Oaks, PA.

78. Plaintiffs did not provide Defendant prior express consent to communicate, in connection with the collection of the Debts, with any third-party mail vendor.

79. RevSpring, Inc. is not the consumer about whom the Debts relate.

80. RevSpring, Inc. is not any of the Plaintiffs' attorney.

81. RevSpring, Inc. is not a consumer reporting agency.

82. RevSpring, Inc. is not the creditor for the Debts.

83. RevSpring, Inc. is not the attorney of the creditor for the Debts.

84. RevSpring, Inc. is not the attorney of the debt collector.

85. Defendant's communications with RevSpring, Inc. were in connection with the collection of a debt since it involved disclosure of the Debts to a third-party with the objective being to communicate with and motivate the consumers to pay the alleged Debts.

86. Further, Defendant's communications with RevSpring, Inc. were concerned with, referenced, and related to the Debts.

87. Defendant's communications with RevSpring, Inc. invaded Plaintiffs' privacy and intruded upon their seclusion by sharing private debt collection information with a third-party that was not entitled to receive such information.

88. Spreading private debt collection information about consumers to third parties not authorized by the FDCPA without the consumers' consent also increases the likelihood that such debt collection information will be further spread (either intentionally or unintentionally) to other parties not authorized by the FDCPA.

## CLASS ALLEGATIONS

89. Plaintiffs bring this action on behalf of themselves individually, and on behalf of all others similarly situated ("the Class").

90. Plaintiffs represent, and are members of the Class, defined as follows:

> (i) all consumers with addresses within the United States; (ii) about whose debt Defendant communicated information in connection with the collection of such debt to any third-party vendor(s); (iii) without the subject consumer's prior consent given directly to Defendant for the communications; (iv) at any time one year prior to the date of the filing of this Action.

91. Defendant and its employees or agents are excluded from the Class.

92.     Alternatively, Plaintiffs represent, and are members of the Sub-Class One, defined as follows:

>   (i) all consumers with addresses within the State of Indiana; (ii) about whose debt Defendant communicated information in connection with the collection of such debt to any third-party vendor(s); (iii) without the subject consumer's prior consent given directly to Defendant for the communications; (iv) at any time one year prior to the date of the filing of this Action.

93.     Defendant and its employees or agents are excluded from the Sub-Class One.

94.     Alternatively, B.D. and Strube represent, and are members of the Sub-Class Two, defined as follows:

>   (i) all consumers with addresses within the county of Marion, state of Indiana; (ii) about whose debt Defendant communicated information in connection with the collection of such debt to any third-party vendor(s); (iii) without the subject consumer's prior consent given directly to Defendant for the communications; (iv) at any time one year prior to the date of the filing of this Action.

95.     Defendant and its employees or agents are excluded from the Sub-Class Two.

96.     Alternatively, Joest represents, and is a member of the Sub-Class Three, defined as follows:

>   (i) all consumers with addresses within the county of Hamilton, state of Indiana; (ii) about whose debt Defendant communicated information in connection with the collection of such debt to any third-party vendor(s); (iii) without the subject consumer's prior consent given directly to Defendant for the communications; (iv) at any time one year prior to the date of the filing of this Action.

97.     Defendant and its employees or agents are excluded from the Sub-Class Three.

98.     Plaintiffs do not know the exact number of persons in the Class or the Sub-Classes but believe it to be in the several hundreds if not thousands or more, making joinder of all these actions impracticable.

99.   The joinder of the Class members and/or Sub-Class members is impractical and the disposition of their claims in a class action will provide substantial benefits both to the parties and to the Court.

100.  The identity of the individual members of the Class and/or Sub-Classes is ascertainable through Defendant and/or third-party vendor records or by public notice.

101.  There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class and/or Sub-Classes.

102.  The questions of law and fact common to the Class and/or Sub-Classes predominate over questions affecting only individual class members, and include, but are not limited to, the following:

   a.   Whether a debt collector has a right to communicate, in connection with the collection of a debt, consumer debt information with a third-party letter vendor;

   b.   Whether members of the Class and/or Sub-Classes are entitled to the remedies under the FDCPA;

   c.   Whether members of the Class and/or Sub-Classes are entitled to declaratory relief pursuant to the FDCPA;

   d.   Whether members of the Class and/or Sub-Classes are entitled to injunctive relief pursuant to the FDCPA;

   e.   Whether members of the Class and/or Sub-Classes are entitled to an award of reasonable attorneys' fees and costs of suit pursuant to the FDCPA; and,

103.  As persons that received written communications that appear to confirm that information about their Debts was sent to a third-party vendor in connection with the collection of the Debts, Plaintiffs are asserting claims that are typical of the Class and/or Sub-Classes.

104.    Plaintiffs will fairly and adequately protect the interests of the Class and/or Sub-Classes.

105.    Plaintiffs have retained counsel experienced in consumer class action litigation and in handling claims involving unlawful debt collection practices.

106.    Plaintiffs' claims are typical of the claims of the Class and/or Sub-Classes, which all arise from the same operative facts involving unlawful collection practices.

107.    A class action is a superior method for the fair and efficient adjudication of this controversy.

108.    Class-wide damages are essential to induce Defendant to comply with federal law.

109.    The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action under the FDCPA are $1,000.00.

110.    Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, *e.g.*, securities fraud.

111.    Additionally, members of the Class and/or Sub-Classes are unlikely to be aware of their rights.

112.    Defendant has acted on grounds generally applicable to the Class and/or Sub-Classes, thereby making appropriate final declaratory relief with respect to the Class and/or Sub-Classes as a whole.

113.    Plaintiffs contemplate providing notice to the putative class members by direct mail in the form of a postcard and via an internet website.

114.    Plaintiffs request certification of a hybrid class for monetary damages and injunctive and/or declaratory relief.

## FIRST CAUSE OF ACTION
### The Fair Debt Collection Practices Act
### 15 U.S.C. § 1692 *et seq.*

115.    Plaintiffs repeat, re-allege, and incorporate by reference all above paragraphs.

116.    The foregoing acts and omissions constitute violations of the FDCPA, including, but not limited to 15 U.S.C. § 1692c(b).

117.    Section 1692c(b) provides that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

118.    Section 1692c(b) identifies a specifically enumerated list of entities that a debt collector can communicate with in connection with the collection of a debt and that list does not include third-party mail vendors to send debt collection letters.

119.    By communicating regarding the Debts—including by disclosing, among other things, the existence of the Debt, the amount owed, and the alleged creditor—with a third-party mail vendor, Defendant violated 15 U.S.C. § 1692c(b). *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021).

120.    The harm Plaintiffs suffered is particularized in that the violative debt collection letters at issue were sent to each personally and regarded their personal alleged Debts.

121.    And the violation of Plaintiffs' rights not to have their private information shared with third-parties is a concrete injury sufficient to confer standing.

122.    The harm Plaintiffs allege here—disclosure of private information of a personal, sensitive nature to third-party vendors—is precisely the type of abusive debt collection practice that the FDCPA was designed to prevent. *See* 15 U.S.C. § 1692(a) ("Abusive debt collection

practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to *invasions of individual privacy*.") (Emphasis added).

123. Moreover, concrete injuries can be found where "intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

124. By communicating with a third party in connection with the collection of the Debts, Defendant harmed Plaintiffs by invading their privacy.

125. By communicating with a third-party in connection with the collection of the Debts, Defendant harmed Plaintiffs by disclosing private facts about the Debts, thus intruding upon Plaintiffs' seclusion.

126. For more than a century, U.S. Court have held allegations of invasions of personal privacy are a valid basis for tort suits. *See, e.g., Pavesich v. New England Life Ins. Co*., 122 Ga. 190, 50 S.E. 68 (1905); *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076 (1911); *Kunz v. Allen*, 102 Kan. 883, 172 P. 532 (1918).

127. Because of the close relationship between 15 U.S.C. § 1692c(b) and the harm that Courts in the United States have long recognized as cognizable and because of Congress's explicit statement that the FDCPA was designed to protect against invasions of individual privacy, Plaintiffs and the proposed class have the requisite standing to sue and seek redress for their harms.

128. As a result of each and every violation of the FDCPA, Plaintiffs are entitled to statutory damages in an amount up to $1,000.00 and such amount as the Court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000.00 or 1 per centum of the net worth of the debt collector pursuant to 15

U.S.C. § 1692k(a)(2)(B); and costs together with reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant.

## REQUEST FOR A JURY TRIAL

129.    Plaintiffs are entitled to, and demand, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request the Court grant Plaintiffs the following relief against Defendant:

- That this action be certified as a class action on behalf of the Class and/or Sub-Class One and/or Sub-Class Two and/or Sub-Class Three as requested herein;

- That Plaintiffs be appointed as representative of the Class and/or respective Sub-Classes;

- That Plaintiffs' counsel be appointed as counsel for the Class and/or respective Sub-Classes;

- An award of statutory damages of $1,000.00 for each named Plaintiff and such amount as the Court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000.00 or 1 per centum of the net worth of the debt collector, pursuant to 15 U.S.C. § 1692k(a)(2)(B);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3), against Defendant;

- Any and all other relief that this Court deems just and proper.

Dated: August 19, 2021

Respectfully Submitted,


By:  /s/Richard J. Shea

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC.
Attorneys for Plaintiff
6100 N. Keystone Avenue, Suite 620
Indianapolis, IN 46220
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com